THE LYMAN D. FOSTER.

HINDSGAUL v. THE LYMAN D. FOSTER.

(District Court, D. Washington, N. D. March 5, 1898.)

1. ADMIRALTY JURISDICTION—SUITS IN REM.
   Admiralty rule 16 precludes a member of the crew from maintaining a suit in rem to recover damages for assaults and injuries inflicted by the captain.
2. FOREIGN COURTS—CRIMINAL JURISDICTION—ASSAULT IN HARBOR.
   An assault committed on board a merchant vessel in a harbor within the territorial jurisdiction of a foreign country is within the jurisdiction of the courts of that country; and, if a member of the crew is there convicted and imprisoned, the judgment will be conclusive here, so that he cannot afterwards sue for wages, etc., on the theory that a wrong was done him at the instigation of the captain.
3. SAME—SHIPPING—IMPRISONMENT OF MATE IN FOREIGN COUNTRY.
   Where a mate was imprisoned in a foreign country after conviction of an assault on the captain in the harbor, and the captain, when the ship was ready to sail, placed his wages for the time he was on board in the hands of the American consular agent, who paid therefrom the costs of the criminal prosecution, and turned over the remainder to the prisoner, *held*, that the ship was not liable for any misapplication, if there was one, made by such consular agent.

This was a libel in rem by Nils E. Hindsgaul against the schooner Lyman D. Foster to recover wages, expenses, and damages for an assault alleged to have been committed upon him by the master.

P. P. Carroll, for libelant.
Metcalfe & Jurey, for respondent.

HANFORD, District Judge. The libelant was employed as first mate of the schooner Lyman D. Foster, for a voyage from Port Townsend to the port of Freemantle, West Australia, and return to a port of the United States on the Pacific coast,—the voyage not to exceed 16 months,—and was to receive wages at the rate of $50 per month. Within a short time after sailing from Port Townsend there was trouble between him and the captain, in consequence of which the libelant was deposed, and the captain himself performed the duties of mate.

After the schooner had entered the harbor of Freemantle, and when she was about to drop her anchor, the captain went forward to oversee the running out of the anchor chain, and, meeting the libelant near the windlass, ordered him to get out of the way, and immediately there was a fight between the two.    Blows were struck by each.    The captain was knocked down, and received considerable injury.    There is a conflict in the testimony as to which was the aggressor, but, in the view I have taken of the case, it is unnecessary for me to decide this question.    When the captain went ashore he reported the occurrence to the consular agent of the United States, who thereupon lodged a complaint with a local magistrate, charging the libelant with the commission of an assault upon the captain.    The record of the proceedings in the case in the Australian court has not been produced, but from the testimony I find that the libelant was taken before the court, and the witnesses to the occurrence on board the schooner in the harbor were summoned.    One was sworn and gave testimony on the part of the prosecution.    Three others, called at the instance of the libelant, were sworn and testified in his behalf.    The magistrate or judge before whom the case was tried then refused to hear the testimony of other witnesses called at the instance of the libelant, for the reason that the three who did testify corroborated the testimony of the one witness for the prosecution as to the material points in the case.    And, on the testimony taken, the court adjudged the libelant to be guilty as charged, and sentenced him to be punished by imprisonment for 12 weeks; and he was detained in prison under said sentence, having yet several weeks to serve, when the schooner was ready to leave the port. Before sailing from Freemantle, the captain gave to the United States consular agent a sum of money for the libelant, equal to the entire amount of his wages, at the rate agreed upon, for the time he was in the schooner, without making any deduction for the time he was off duty.    The consular agent paid the costs and expenses of the criminal prosecution against the libelant, and gave him the balance.    In this suit the libelant claims the balance of his wages for the entire voyage, and his expenses incurred at Freemantle and in returning to the United States, and also damages for assaults and abuse which he alleges were committed by the master.

Admiralty rule No. 16, prescribed by the supreme court, precludes the libelant from maintaining a suit in rem against the vessel to recover damages for the assaults and injuries alleged to have been inflicted by the captain.

Libelant's counsel has presented his case upon the theory that a court of a foreign country does not have jurisdiction to punish an American seaman for an offense against the laws of the United States, committed on board of an American vessel; and it is his contention that the imprisonment of the libelant at Freemantle was wrongful; that the captain violated his duty in sending the libelant ashore to be imprisoned in a foreign country, and that, having by his wrongful acts prevented the libelant from completing the voyage, he should be held estopped to dispute the right of the libelant to recover wages for the entire voyage, according to the terms of the contract; and that, having left libelant in a foreign port, the schooner is also liable for the

amount of his expenses incurred while there, and in returning. I assent to the proposition that the courts of one country have no jurisdiction to punish a seaman for any offense committed at sea on board a merchant vessel under the flag of another country, nor to punish a seaman for an offense committed within its territorial jurisdiction, for an act made punishable as a crime by the laws of the country to which his ship belongs, unless such act is also a crime under the laws of the country where committed. But the jurisdiction of a court to punish infractions of the local law committed within its territorial jurisdiction may not be denied on the ground that the offender is an alien in the country, or that the act was committed on board of a foreign ship. The act of which the libelant was accused at Freemantle is malum per se, and presumably punishable as a crime in all civilized countries. The prosecution of the libelant was conducted according to forms of procedure designed to insure fairness and to promote justice, and he was convicted upon testimony of a witness against him, which was corroborated by witnesses called at his instance. Whether the judgment against him was just or unjust is a question which the courts of this country are not competent to decide, having no power to review the judgment of a court of competent jurisdiction of a foreign country. I hold that the detention of libelant at Freemantle was not an unauthorized interference on the part of the local government, nor a wrong done to him at the instigation of the captain, but that he received British justice, at the hands of a British court, for a violation of British law committed within British territory. As a necessary consequence of his imprisonment, he was rendered incapable of fulfilling his contract and earning the wages which he is now suing to recover. By placing the amount of his wages for the time the libelant was in the schooner in the hands of the United States consular agent, for the libelant, the captain fully performed his duty towards the libelant as to payment of his wages. From that time the consular agent became responsible to the libelant for the money, and is liable if he misapplied any of it, but the schooner is free. Under the circumstances, there could be no formality observed in discharging the libelant from the service of the schooner,—the actual condition of things effected an actual discharge; for the captain would not have been justified in detaining the schooner, on expense, in a foreign port, for several weeks, for the mere sake of receiving on board a subordinate officer detained in prison as punishment for an aggravated assault. He pursued the right course in going to sea when the schooner was ready to sail, and leaving all the money which the libelant could legally claim in the hands of an accredited representative of our government. A decree will be entered dismissing the suit, with costs.